IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DOMINGO MARTINEZ-DELEÓN,

                                                                OPINION and ORDER

          Petitioner,

                                                               10-cv-137-bbc

    v.

CAROL HOLINKA, Warden FCI Oxford,

          Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Petitioner Domingo Martinez-Deleón, a prisoner at the Federal Correctional Institution in Oxford, Wisconsin, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. He contends that prison officials violated his right to due process when they took away his good-time credits after a halfway house disciplinary hearing conducted by a biased hearing officer. Petitioner filed a similar petition that was dismissed on January 26, 2010 for failure to exhaust his administrative remedies. Martinez-Deleón v. Holinka, 09-cv-501-bbc, dkt. #26. He alleges that he has now exhausted his administrative remedies and is asking for reinstatement of good-time credits he lost at the disciplinary hearing and expungement of the related incident report from his record.

1

After reviewing petitioner's affidavit and exhaustion materials, I conclude that this petition for writ of habeas corpus must be dismissed because petitioner has not shown that he is in custody in violation of the Constitution or laws of the United States.

In his new petition, petitioner incorporates by reference the facts that the court found as undisputed in his previous case. Thus, I draw the following allegations of fact from this petition and the petition in <u>Martinez-Deleón v. Holinka,</u> 09-cv-501-bbc.

## ALLEGATIONS OF FACT

On April 8, 2009, petitioner was transferred from the Federal Correctional Institution in Oxford, Wisconsin to the Mid-Valley halfway house in Edinburg, Texas. During the intake process at the halfway house, petitioner was asked to take a breathalyzer test. He tested positive for alcohol and received an incident report for the prohibited act of making, possessing or using intoxicants. Petitioner was transported to the Hidalgo County jail.

On April 9, 2009, Gabriel Lopez and John Corona, officials from the halfway house, came to the Hidalgo County jail to see petitioner. In a small room at the jail, Lopez told petitioner that he was there to conduct an investigation of petitioner's intoxication charge and take petitioner's statement. Corona left the room and petitioner said to Lopez:

> I traveled on the bus from Oxford, Wisconsin to Edinburg, Texas. I was on the road for about 39 hours, but at no time consumed any alcohol. I did drink an energy drink while on my trip. I arrived to Stripes convenient store at

2

> about 9:35 am and called my son and wife to transport me to Mid-Valley House. I did tell my wife that I was having stomach pains and the only other drink I had was prune juice.

Lopez gave petitioner two forms: "Inmate Rights at Center Disciplinary Committee hearing" and "Notice of Center Disciplinary Committee Hearing." Petitioner signed the notice form, acknowledging that he had received notice of his rights, including his right to be present for a center disciplinary hearing, the right to have a staff member represent him at the hearing, the right to call witnesses and the right to contest the decision within 20 days of receiving notice. He also signed a waiver of his right to 24 hours' notice before a hearing and his right to have a staff member present at the hearing. The notice form had a space in which petitioner could list witnesses he wished to call, but petitioner listed no witnesses.

After Lopez concluded his investigation, he left the room and Corona entered. Corona introduced himself as a "case worker" from the halfway house who wanted to ask some questions about the incident. Corona asked petitioner questions about the intoxication charge and took petitioner's statement in which petitioner denied the charges. Corona showed his notes of the event to petitioner and asked petitioner whether he had anything more to add, but petitioner said no. Corona told petitioner that he was going to recommend that petitioner lose some good time credit. Corona asked petitioner to sign the center discipline committee hearing report, but petitioner refused, stating that he was not guilty.

3

Corona completed a "Center Discipline Committee Report" form on which he concluded that petitioner had committed the act as charged. In concluding that petitioner was guilty, Corona relied on the two breathalyzer tests and a certificate showing that the breathalyzer was calibrated in accordance with policy. Corona considered petitioner's statement denying alcohol consumption, but concluded that petitioner had not presented "conclusive information to show that he did not consume alcohol." On the form, Corona recommended that petitioner lose good time credits in order to "hold client Martinez accountable for his behavior and deter him and others from engaging in this type of conduct in the future. . . ."

On April 21, 2009, a disciplinary hearing officer reviewed Corona's findings and recommendations, certified that Corona had conducted a disciplinary hearing in accordance with bureau policy and that Corona's findings were supported by the evidence. The officer disallowed 11 days of good-time credit and ordered that petitioner be transferred to a secure facility. At some point following the disciplinary hearing officer's decision, petitioner was transferred back to the Federal Correctional Institution in Oxford, Wisconsin.

## DISCUSSION

Under 28 U.S.C. § 2241, a district court is authorized to grant relief to prisoners "in custody in violation of the Constitution or laws or treaties of the United States." Although

4

§ 2241 does not include an exhaustion rule, the Court of Appeals for the Seventh Circuit applies one under common law.  Greene v. Meese, 875 F.2d 639, 640 (7th Cir. 1989); Sanchez v. Miller, 792 F.2d 694, 697 (7th Cir. 1986).  To meet the exhaustion requirement, a prisoner must utilize the administrative remedies offered by the Bureau of Prisons before filing a petition for writ of habeas corpus.  28 C.F.R. §§ 542.14-15.

Petitioner's petition in case number 09-cv-501-bbc was dismissed for failure to exhaust his administrative remedies.  Petitioner alleges that he has now exhausted his remedies, although he has attached to his petition the same documents that the court relied on previously to conclude that petitioner had *not* exhausted his remedies.  Thus, it is unclear whether petitioner has actually completed the administrative review process.  However, exhaustion is an affirmative defense and because respondent has not yet appeared, the issue of exhaustion has not been raised.  In any event, now that I consider the merits of petitioner's claim, I conclude that I must dismiss it because he has not shown that he is in custody in violation of federal law.

Petitioner asserts that he is in custody in violation of his due process rights under the Fifth Amendment because the center disciplinary hearing officer was not impartial and because he did not receive a *prison* disciplinary hearing before a *prison* disciplinary hearing officer before losing good-time credits.  These arguments lack merit.

Because petitioner lost good time credit, due process requires that he receive (1)

5

advance written notice of the charges against him; (2) a hearing before an impartial decisionmaker at which he can present testimony and evidence; and, (3) for any disciplinary action taken, a written explanation, supported by at least "some evidence" in the record. Wolff v. McDonnell, 418 U.S. 539, 563-71 (1974); Lagerstrom v. Kingston, 463 F.3d 621, 624 (7th Cir. 2006). "It is without question that an individual may waive his or her procedural due process rights." Domka v. Portage County, 523 F.3d 776, 781-82 (7th Cir. 2008).

Petitioner contends that Corona was not an impartial decision maker because the records of the April 9, 2009 events would allow an inference to be drawn that Corona was involved in the investigation as well as the disciplinary decision. If a disciplinary decision maker is substantially involved in the underlying investigation, there may be a due process violation. Piggie v. Cotton, 342 F.3d 660, 667 (7th Cir. 2003). The center disciplinary hearing report states that the hearing was conducted at 2:45 p.m. on April 9, 2009. Lopez states in his investigative report that he began his investigation of petitioner's intoxication charge on April 9 at 2:27 p.m and concluded it at 2:55 p.m. Petitioner contends that because these times overlap, the court should infer that Lopez and Corona conducted the hearing and investigation together in the same room. However, such an inference would contradict petitioner's sworn affidavit regarding the events of April 9, 2009. In case number 09-cv-501-bbc, petitioner had encouraged the court to draw similar inferences about what

6

happened on April 9 at the Hidalgo County jail in light of the times and dates listed on the investigation and hearing reports. Instead of drawing such inferences, I instructed petitioner to submit an affidavit in which he described precisely what happened on that day. In his affidavit, dkt. #25-10, petitioner stated that

> Gabriel Lopez comes in and right behind [him] . . . John Corona came in to the little room. Then Mr. Lopez said that they were from the Halfway house and were there to talk to me as to what happened. That he was going to investigate at that moment. Mr. Corona leaves the little room and Mr. Lopez said [Corona] has to step out while I ask you a few questions.

After Lopez finished asking petitioner questions, "Mr. Lopez [left] the little room and Mr. Corona step[ed] in." Petitioner submitted this sworn account under penalty of perjury. By his own admission, Corona did not conduct the investigation with Lopez. Nothing in the record would permit the court to infer that Corona was involved in the investigatory aspect of the disciplinary charge. Thus, petitioner has not shown that his due process rights were violated with respect to the impartiality of his hearing officer.

Petitioner's second argument is that his due process rights were violated because, under the Bureau of Prison's regulations, he was entitled to a hearing before a prison disciplinary hearing officer. I rejected this argument in petitioner's previous petition. I explained that petitioner may have been entitled to such a hearing under the regulations governing inmate discipline. 28 C.F.R. § 541.10 (explaining that regulations apply to all inmates in "the care, custody, and control (direct or constructive) of the Bureau of Prisons");

7

28 C.F.R. § 541.15 (requiring that hearing be convened before discipline hearing officer for alleged rules violations that are "serious and warrant[] consideration for other than minor sanctions . . ."). However, the regulation-established right to a certain type of hearing officer does not translate into a *due process* right. Smith v. Shettle, 946 F.2d 1250, 1254 (7th Cir. 1991) ("Procedural regulations are not a source of constitutional entitlements.") The federal constitution establishes procedural due process rights, while prison regulations are "primarily designed to guide correctional officials in the administration of a prison. [They are] not designed to confer [due process] rights on inmates." Sandin v. Conner, 515 U.S. 472, 481-82 (1995). Thus, unless a violation of prison regulations resulted in violation of the due process rights enunciated in Wolf, 418 U.S. 539, the violation of the regulation does not establish that petitioner is "in custody in violation of the Constitution or laws or treaties of the United States," as is required for habeas relief under § 2241. Piggie, 344 F.3d at 674 ("only" due process to which prisoners are entitled in the prison disciplinary context is the process enunciated in Wolff); see also Ramos v. Gilkey, 1997 WL 201566, *3-4 (N.D. Ill. April 17, 1997) (holding that prisoner not entitled to habeas relief because hearing before center discipline committee provided due process protections even though the committee failed to refer case to discipline hearing officer in violation of prison regulations); Doyle v. Holt, 1994 WL 469233, *2 (N.D. Ill. Aug. 26, 1994) (same).

In this case, the failure to provide petitioner a hearing before a prison disciplinary

8

hearing officer rather than a center discipline hearing officer did not deprive petitioner of the protections afforded by due process. Petitioner was given a hearing before an impartial decision maker at which petitioner provided testimony in his own defense. He received notice of the charge against him before the hearing and had an opportunity to provide the names of witnesses to Lopez. He declined to do so. Although it is true that the Court of Appeals for the Seventh Circuit has held that a prisoner should be given a "reasonable time to plan his defense," Miller v. Duckworth, 963 F.2d 1002, 1005 n.2 (7th Cir. 1992), petitioner waived such a right when he signed an agreement stating that he wished to proceed with a hearing at that time.

A discipline hearing officer reviewed the center discipline committee hearing report and petitioner's statement, determined that the hearing provided the same procedural safeguards as disciplinary proceedings in Bureau of Prison facilities and made the final decision to disallow petitioner's good time credits and transfer him back to federal prison. Thus, the center disciplinary hearing provided petitioner all the due process protections set out in Wolff, 418 U.S. 539, and petitioner has failed to show that he is in custody in violation of the Constitution or laws of the United States.

ORDER

IT IS ORDERED that the petition for a writ of habeas corpus filed by Domingo

Martinez-Deleón is DISMISSED for petitioner's failure to show that he is in custody in violation of the Constitution or laws of the United States. The clerk of court is directed to enter judgment for respondent Carol Holinka and close this case.

Entered this 28th day of April, 2010.

> BY THE COURT:
> /s/
> BARBARA B. CRABB
> District Judge